UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | | |
|---|---|---|---|
| BECKY BURGER, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | No. 19 C 8231 | |
| v. | ) | | |
| | ) | Judge Sara L. Ellis | |
| SPARK ENERGY GAS, LLC, | ) | | |
| | ) | | |
| Defendant. | ) | | |

OPINION AND ORDER

Plaintiff Becky Burger contracted with Defendant Spark Energy Gas, LLC ("Spark

Energy") for residential natural gas supply services in the hopes of saving on the cost of natural

gas. Finding that Spark Energy actually charged her more than she would have paid if she had

remained with her local utility supplier, Burger filed this putative class action against Spark

Energy, alleging violations of the Illinois Consumer Fraud and Deceptive Business Practices Act

("ICFA"), 815 Ill. Comp. Stat. 505/1 *et seq.* She also brings claims for breach of contract and

the implied covenant of good faith and fair dealing and unjust enrichment. Spark Energy has

filed a motion to dismiss Burger's amended complaint.[1] The Court dismisses Burger's ICFA

claims without prejudice because she has failed to allege that Spark Energy's alleged

misrepresentations caused her damage. And while Burger has not sufficiently alleged that Spark

Energy breached an express contractual promise as to how it would determine the variable rate it

charged Burger, she may proceed with a claim for breach with respect to the variable rate based

---

[1] Spark Energy filed an oversized brief without first obtaining leave from the Court in violation of
Northern District of Illinois Local Rule 7.1. Although Burger invites the Court to disregard any pages
exceeding the fifteen-page limit, because Burger substantively responded to the arguments found on those
pages and herself exceeded the page limitation in her response, the Court finds it preferable to decide the
motion on its merits instead of on technicalities. But the Court reminds both parties that they must seek
leave to file an oversized brief if necessary in the future.

on the implied covenant of good faith and fair dealing, as well as a claim that Spark Energy
breached its promise not to charge a monthly administrative fee unless disclosed in the parties'
agreement.  Finally, because an unjust enrichment claim may proceed as an alternative to a
contractual claim without pleading fraud, the Court does not find it necessary at this time to
consider whether Burger can proceed on an unjust enrichment claim even if she has not
adequately alleged deceptive conduct.

## BACKGROUND[2]

### I.     Deregulation of the Natural Gas Supply Market in Illinois

Illinois has deregulated the retail residential natural gas supply market, with the
expectation that increased competition in the open market will lead to lower prices for
consumers.  Many alternative retail natural gas suppliers ("AGSs"), including Spark Energy,
offer their services to Illinois residents.  Consumers may switch to an AGS or continue to receive
their energy supply from the local utility.  The local utility delivers gas to consumers' homes and
bills the consumer for both energy supply and delivery costs regardless of the energy supplier.
The only difference to the consumer is whether the local utility or the AGS sets the price for the
energy supply.

In Illinois, the Illinois Commerce Commission regulates the rates the local utility can
charge.  The local utility rates reflect market costs of wholesale natural gas and associated costs
and do not include any profits.  The local utility computes a consumer's monthly natural gas
supply cost using the Purchased Gas Adjustment ("PGA") mechanism, which includes the
anticipated wholesale cost of gas for the month as well as adjustments from prior periods.  The

---

[2] The facts in the background section are taken from Burger's amended complaint and are presumed true
for the purpose of resolving Spark Energy's motion to dismiss.  *See Virnich v. Vorwald*, 664 F.3d 206,
212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782
(7th Cir. 2007).

PGA can change monthly.  AGSs operate differently and do not have to file or seek approval for the rates they charge or the methods they use to set those rates.  AGSs use various purchasing strategies to reduce natural gas costs.  For example, AGSs may own natural gas production facilities, buy natural gas from wholesale marketers or brokers, or purchase futures contracts for delivery of natural gas at a predetermined price in the future.  These actions theoretically should allow AGSs to offer competitive or substantially lower rates than utilities.

In light of deregulation of the energy supply market, Illinois has adopted consumer protection regulations to protect Illinois consumers from deceptive business practices in the energy industry.  Among other things, the regulations provide a consumer with the right to rescind an agreement with an AGS within ten business days after the date on the gas utility notice provided to the customer.  815 Ill. Comp. Stat. 505/2DDD(f).  An AGS must also "clearly and conspicuously disclose[ ], in plain language, the prices, terms, and conditions of the products and services being offered and sold to the customer."  220 Ill. Comp. Stat. 5/19-115(g)(2).  The Illinois Commerce Commission also posts information provided by AGSs that at a minimum discloses for variable rates "the terms of such variability, including, but not limited to, any index that is used to calculate the price and any additional charges, costs and fees."  220 Ill. Comp. Stat. 5/19-125(c)(5).

## II.     Spark Energy's Business Model

Spark Energy approached Burger with an initial offer of a fixed energy supply rate below or comparable to that offered by her local utility, Nicor Gas.[3]  Once the initial fixed rate expired, Spark Energy indicated it would transition her to a variable rate plan.  Spark Energy provided Burger with its standard Welcome Letter and Illinois Residential and Small Commercial

---

[3] The amended complaint confusingly refers to three different years for when Burger began using Spark Energy as her energy supplier.

Customer Disclosure Statement and Terms of Service (collectively, the "Terms of Service"). The Terms of Service provided that, after the expiration of the initial fixed rate, Spark Energy would automatically enroll Burger into its month-to-month variable rate plan, under which the "rate may vary according to market conditions." Doc. 19 ¶ 30. In light of this representation, a reasonable consumer and therefore Burger would expect Spark Energy's variable rates to reflect wholesale natural gas prices and the retail prices its competitors, i.e. local utilities and other AGSs, charged. The Terms of Service further provided that a customer "may also pay a monthly administrative fee, the amount of which, if applicable, is disclosed in [the Terms of Service]." *Id.* ¶ 61. The Terms of Service provided to Burger did not disclose a monthly administrative fee, but Spark Energy began charging Burger a monthly administrative fee of $6.25 per month once the fixed rate period expired.

Despite there being no material difference between the costs Spark Energy incurs for its fixed and variable rate customers, Spark Energy charges a substantially higher variable than fixed rate. While it offered fixed rates of $0.449, $0.559, and $0.625 per therm in Burger's region in 2018, Spark Energy charged Burger an average variable rate of $1.409 per therm in 2018. Spark Energy's variable rate was also well above the rates offered by the local utility, Nicor Gas, other AGSs in the region, and the wholesale rate. Between August 2017 and May 2018, the last ten billing periods during which Burger paid Spark Energy's variable rate, Spark Energy's variable rates were, on average, 305% higher than Nicor Gas' rates. The variable rate also did not fluctuate in the same direction as Nicor Gas' rate. As for other AGS rates, in 2018, Constellation Energy offered a fixed rate of $0.439 per therm, Just Energy a fixed rate of $0.415 per therm, and Direct Energy a fixed rate of $0.389 per therm. That same year, Ambit Energy offered a variable rate of $0.3552 per therm and Illinois Energy offered a variable rate of $0.453

4

per therm, all well below Spark Energy's 2018 average variable rate. And while the cost of wholesale natural gas is the primary component of Spark Energy's non-overhead costs, its variable rate on average was 280% higher than wholesale natural gas prices between August 2017 and May 2018 and did not necessarily move in the same direction or in the same proportions as the wholesale price.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "This ordinarily requires describing the 'who, what, when, where, and how' of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case." *AnchorBank*, 649 F.3d at 615 (citation omitted). Rule 9(b) applies to "all averments of fraud, not claims of fraud." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). "A claim that 'sounds in fraud'—

in other words, one that is premised upon a course of fraudulent conduct—can implicate Rule 9(b)'s heightened pleading requirements." *Id.*

## ANALYSIS

### I.      ICFA (Counts I and II)

To state an ICFA claim, Burger must allege (1) a deceptive or unfair act or practice by Spark Energy, (2) Spark Energy's intent that Burger rely on the deceptive or unfair practice, (3) the deceptive or unfair practice occurred in the course of conduct involving trade or commerce, and (4) Spark Energy's deceptive or unfair practice caused Burger actual damage. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012); *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010). Burger may recover for either deceptive or unfair conduct, *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 417 (2002), and she proceeds under both theories. A deceptive practices claim must meet Rule 9(b)'s heightened pleading standard, while an unfair practices claim need not because it is not based on fraud. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014).

Burger claims that Spark Energy violated ICFA by (1) representing that its variable rates would vary based on market conditions when in fact it charges variable rates substantially higher than dictated by market conditions, and (2) charging a monthly administrative fee despite failing to disclose that fee in the Terms of Service. Spark Energy raises numerous challenges to Burger's ICFA claims, but the Court needs to only address one: whether Burger has properly alleged that Spark Energy's conduct proximately caused her damages.

Although reliance is not an element of an ICFA claim, Burger must nonetheless plead that Spark Energy's representations proximately caused her damages. *In re 100% Grated Parmesan Cheese Mktg. & Sales Pracs. Litig.*, 393 F. Supp. 3d 745, 757 (N.D. Ill. 2019). "If a

6

consumer has neither seen nor heard [the] statement, then she cannot have relied on the statement and, consequently, cannot prove proximate cause." *De Bouse v. Bayer AG*, 235 Ill. 2d 544, 554 (2009). Burger alleges that Spark Energy provided her with the Terms of Service, but she does not allege that she actually read them or knew what was in them. She instead couches her allegations in terms of what a reasonable consumer would expect from Spark Energy's representations, not what she herself expected from her review of the Terms of Service. *See, e.g.*, Doc. 19 ¶ 32 (discussing what "[a]ny reasonable consumer would understand" the reference to market conditions to mean and that she "thus reasonably expected" the same thing); *id.* ¶ 63 ("No reasonable consumer who knows the truth about Spark Energy's exorbitant rates would choose Spark Energy as a natural gas supplier."). Because ICFA requires individualized proof of causation, *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514–15 (7th Cir. 2006), Burger's allegations about what reasonable consumers would expect do not suffice, *see Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 155 (2002) ("Because plaintiff does not allege that he saw, heard or read any of defendant's ads, plaintiff cannot allege that he believed that he was buying gasoline which benefitted the environment or improved engine performance."); *Mednick v. Precor, Inc.*, 320 F.R.D. 140, 149 (N.D. Ill. 2017) ("One cannot be deceived by what one did not see, and this personal exposure to the alleged misrepresentation is crucial under Illinois law."); *Rolland v. Spark Energy, LLC*, No. 17-2680(MAS)(LHG), 2019 WL 1903990, at *4 (D.N.J. Apr. 29, 2019) (the plaintiff did not properly plead the required causal nexus for a New Jersey consumer fraud claim where she did not allege that she "saw, read, heard, or in any way took [the Terms of Service] into consideration" and instead alleged only that she "received" a renewal notice, that Spark "provided her" with the Terms of Service, and what a reasonable consumer would

understand the information meant). Therefore, the Court dismisses Burger's ICFA claim without prejudice.

## II.     Breach of Contract and the Covenant of Good Faith and Fair Dealing (Count III)

Burger claims that Spark Energy breached its promise to charge a variable rate that "may vary according to market conditions," as well as its promise not to charge a monthly administrative fee without prior disclosure in the Terms of Service. Additionally, Burger claims that Spark Energy acted in bad faith by engaging in price gouging and frustrating Burger's reasonable expectation that the variable rate would reflect market prices. Spark Energy argues that Burger has not sufficiently alleged that it breached any contractual promise and that she cannot pursue an independent claim for breach of the duty of good faith and fair dealing.

Initially, the Court agrees that Burger has not alleged that Spark Energy breached its promise to charge a variable rate that "may vary according to market conditions." The parties spend much time debating the meaning of "market conditions," with Burger arguing that a reasonable consumer would find that market conditions means wholesale market pricing and the retail rates of Spark Energy's competitors, including the local utility. On the other hand, Spark Energy points out that the Terms of Service do not include specific language as to what constitutes "market conditions" and that the Seventh Circuit has rejected using wholesale price and local utility rates as comparators. *See Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 615 (7th Cir. 2019) (wholesale price not a proper comparator against which to measure "generally prevailing market prices" because individual customers "could not go out and purchase electricity at the [wholesale] rate, no matter their electricity supplier"); *id.* (local utility was not a proper comparator because the Illinois Commerce Commission sets its rates, thereby excluding those rates from "market forces").

8

Although *Sevugan* suggests that the only plausible comparators are other AGSs in Illinois, *id.* at 616, the parties' dispute about the meaning of "market conditions" in the Terms of Service is irrelevant to whether Spark Energy breached the Terms of Service in this case.  The Terms of Service use permissive language, stating only that the rate "*may* vary according to market conditions."  In other words, Spark Energy did not make any guarantee as to how it would set the rate and instead only stated that it could consider market conditions when exercising its discretion to set the rate.[4]  *See Marshall v. Verde Energy USA, Inc.*, No. 18-1344(JMV)(JBC), 2019 WL 1254562, at *5 (D.N.J. Mar. 19, 2019) ("[T]he word "may" in the Terms of Service means that Verde could, but was not required to, consider market conditions when setting Plaintiff's rate."); *see also Mercado v. Verde Energy USA, Inc.*, No. 18 CV 2068, 2020 WL 1650404, at *2 (N.D. Ill. Jan. 29, 2020) (agreement only promising that the rate "*may* change monthly with market conditions" was "a far cry from a promise that the rate *would* change based on market conditions" and "may well be the equivalent of a statement that defendant reserved discretion in the setting of its rates").  The permissive language distinguishes this case from *Local 901*, in which Spark Energy's variable rate plan allegedly stated that the rate "*would* be based on market prices," which the *Local 901* court treated as leaving Spark Energy without discretion in setting the variable rate.  *IUE-CWA Local 901 v. Spark Energy, LLC*, 440 F. Supp. 3d 969, 974, 979 (N.D. Ind. 2020) (emphasis added).  Because Spark Energy did not have discretion in that case, the *Local 901* court found that the breach of contract claim could proceed given the ambiguity as to the meaning of "market prices."  *Id.* at 979–80.  But here, because Spark Energy's discretion was not cabined by "market conditions," Burger has not

---

[4] The Court expresses no opinion on whether the Terms of Service's language violates any of the statutory disclosure requirements for AGSs with respect to variable rates, focusing instead only on whether Spark Energy's actions could amount to a breach of contract.

plausibly alleged that Spark Energy breached any explicit contractual promise with respect to the variable rate it charged Burger. *Marshall*, 2019 WL 1254562, at *4–5.

But Burger also alleges that Spark Energy breached the implied covenant of good faith and fair dealing by setting commercially unreasonable variable rates. Spark Energy argues that Illinois does not recognize an independent claim for breach of this covenant. Although not a standalone claim, the obligation of good faith and fair dealing exists in every contract in Illinois and guides the construction of explicit terms in an agreement. *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1443 (7th Cir. 1992); *Anderson v. Burton Assocs., Ltd.*, 218 Ill. App. 3d 261, 267 (1991). Violation of the duty may give rise to a breach of contract claim, as Burger claims here. *See Ride Right, LLC v. Pace Suburban Bus*, No. 18-cv-01119, 2018 WL 6446410, at *5 (N.D. Ill. Dec. 10, 2018) (although the duty of good faith and fair dealing does not provide an independent cause of action, it may give rise to a breach of contract claim). To allege a breach of the duty, Burger "must show that the contract vested the opposing party with discretion in performing an obligation under the contract and the opposing party exercised that discretion in bad faith, unreasonably, or in a manner inconsistent with the reasonable expectations of the parties." *Hickman v. Wells Fargo Bank N.A.*, 683 F. Supp. 2d 779, 792 (N.D. Ill. 2010). Here, Burger's amended complaint supports such a claim, alleging that the Terms of Service provided that the variable rate "may vary based on market conditions" and that Spark Energy exercised its discretion contrary to consumers' reasonable expectations by setting a variable rate that did not fluctuate in connection with market conditions. Therefore, at this stage, Burger can proceed on her contract claim concerning the variable rate based on a breach of the implied duty of good faith and fair dealing.

Burger may also proceed on a claim for breach based on Spark Energy allegedly charging her an undisclosed administrative fee. Spark Energy argues that the Terms of Service only applied during the initial fixed rate term and not when Burger moved to a variable rate plan. But the Court must treat Burger's allegations that the Terms of Service applied regardless of whether Spark Energy charged Burger a fixed or variable rate as true for purposes of resolving the motion to dismiss, *AnchorBank*, 649 F.3d at 614, and so cannot consider Spark Energy's contradictory argument that the Terms of Service did not govern the parties' relationship at the time it charged the administrative fee. Burger alleges that the Terms of Service stated that Spark Energy would not charge an administrative fee unless specified in the Terms of Service, that the Terms of Service did not specify that Spark Energy would start charging an administrative fee when Burger switched to a variable rate plan, and that Spark Energy did in fact charge her an administrative fee when that occurred. These allegations suffice to set forth a claim for breach of contract with respect to the administrative fee. To the extent the Terms of Service belie Burger's allegations, Spark Energy can raise the issue, with supporting evidence, at a later stage.

## III.    Unjust Enrichment (Count IV)

Finally, Spark Energy argues that Burger's unjust enrichment claim fails because the amended complaint does not adequately allege that Spark Energy deceived Burger, piggybacking on one of the arguments it made in support of the dismissal of Burger's ICFA claim. *See Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011) ("[I]f an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim."); *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 943 (7th Cir. 2001) ("[I]n the absence of any deception on the part of the defendants, the requisite [elements of unjust enrichment are] not

11

present.").  But an unjust enrichment claim need not always involve fraudulent conduct, and Burger sets forth her unjust enrichment claim as an alternative to her contractual claim, not her ICFA claim.  *See Ass'n Benefit Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 854–55 & n.7 (7th Cir. 2007) ("[U]nder Illinois law, fraud is not an indispensable element of an unjust enrichment claim.").  Any alleged failure to plead deceptive conduct does not affect the viability of the unjust enrichment claim.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Spark Energy's motion to dismiss [47].  The Court dismisses the ICFA claims (Counts I and II) without prejudice.  The Court also dismisses without prejudice the breach of contract claim (Count III) to the extent it is based on breach of an express provision that the variable rate "may vary according to market conditions."  The Court denies Spark Energy's motion to stay discovery pending resolution of its motion to dismiss [49] as moot.

Dated: December 15, 2020

_____
SARA L. ELLIS
United States District Judge

12